IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASEY J. STEURER,
      Petitioner,

vs.                              Case No.:  4:10cv383/RH/EMT

MICHAEL D. CREWS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 18, 19).  Petitioner filed a reply (doc. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.       BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 19).[2]  Petitioner was charged in the Circuit Court in and for Leon County,

---

[1] Michael D. Crews succeeded Kenneth Tucker as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 18, 19).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2002-CF-2992, with one count of attempted first degree murder of a law enforcement officer arising out of or in the scope of the officer's duties and with a weapon (Count I), one count of aggravated assault on a law enforcement officer (Count II), one count of leaving the scene of a crash involving personal injury (Count III), and two counts of misdemeanor battery (Counts IV and V) (Ex. A at 263–64).  Following a jury trial, he was found guilty of the lesser included offense of attempted second degree murder arising out of or in the scope of the officer's duties and with a weapon on Count I, the lesser included offense of aggravated assault on Count II, and leaving the scene of a crash involving personal injury as charged in Count III (Ex. A at 279–80, Exs. C, D).[3]  On May 20, 2003, Petitioner was sentenced as a prison releasee reoffender to thirty (30) years of imprisonment on Count I, and concurrent terms of five (5) years of imprisonment on Counts II and III, to run concurrently with the sentence on Count I, and with pre-sentence jail credit of 284 days (Ex. A at 297–305, Ex. E).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D03-2648 (Ex. F).  The First DCA affirmed the judgment per curiam without written opinion on March 10, 2005 (Ex. H).  Steurer v. State, 895 So. 2d 1072 (Fla. 1st DCA 2005) (Table).  Petitioner did not seek further review.

On June 7, 2006, Petitioner filed, through counsel, a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–17).  Petitioner amended the motion three times and supplemented it once, finally alleging eight (8) grounds for relief (id. at 18–99, 144–52).  The state circuit court summarily denied Grounds 2, 3, 4, 6, 7, and 8 (id. at 100–23, 153–56) and held a limited evidentiary hearing on Ground 5 (Ex. K).[4]  In an order rendered May 6, 2009, the court rendered a final order denying the Rule 3.850 motion (id. at 223–27).  Petitioner appealed the decision to the First DCA, Case No. 1D09-2869 (Ex. L).  The First DCA affirmed the judgment per curiam without written opinion on July 16, 2010, with the mandate issuing September 13, 2010 (Exs. O, R).  Steurer v. State, 43 So. 3d 698 (Fla. 1st DCA 2010) (Table).

---

[3] The State conceded there was insufficient evidence regarding the battery counts, and the trial court granted a judgment of acquittal on those two counts (Ex. D at 312).

[4] Petitioner withdrew Ground 1 at the evidentiary hearing (see Ex. K).

Petitioner filed the instant federal habeas action on September 1, 2010 (doc. 1 at 10). Respondent does not assert a statute of limitations defense (doc. 18 at 9–10).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established

---

[5] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no

Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* <u>Henderson v. Campbell</u>, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district

court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L.

Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[6] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <i>id.</i>, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

[6] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
       (A) the applicant has exhausted the remedies available in the courts of the State; or
       (B) (i)  there is an absence of available State corrective process; or
            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[7] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert

---

[7] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[8]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . .

---

[8] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

.," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly

unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[9]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

---

[9] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[10]

   A.    Ground One:  "Court erred in allowing state to introduce hearsay testimony though witnesses were unavailable."

         Ground Two:  "Court erred in allowing state to use shotgun effect when asking for lesser-included offenses over defense's objection."

         Ground Three:  "Fundamental error improper [sic] procedure failure [sic] of due process right when court instructed the jury as to proper procedure for asking witness questions in which the court would control and then not abide [sic] by own orally set procedure."

         Ground Six:  "Court erred by violating impartiality of judge and jury when telling prosecution to ask the questions for the jury."

In Ground One, Petitioner alleges the trial court erred by allowing the admission of hearsay testimony even though the State "didn't have witnesses/victims in hand before the start of trial" (doc. 1 at 4).  In Ground Two, he alleges the trial court erred by granting the State's request to instruct the jury on lesser included offenses, thereby forcing him to prove his innocence of multiple charges instead of the original charges (*id.*).  In Grounds Three and Six, Petitioner alleges the trial court allowed the jury to question witnesses, over objection by defense counsel, and the court instructed the jury that the following procedure would be followed for doing so:  (1) after each witness was examined by the attorneys, the court would ask the jurors whether they had any additional questions; (2) if any juror had a question, the juror would write it on paper without identifying his or her name or juror number; (3) the bailiff would collect the questions; (4) the court would consider, after consultation with counsel, whether each question was relevant and permissible under the rules of evidence; and (5) if the court and counsel determined the question was permissible, the court would ask the question of the witness (doc. 1 at 5, 6; *see also* Ex. C at 15–16, 24–26).  Petitioner alleges the court then allowed the prosecutor to ask and/or rephrase two of the jury's questions to one of the witnesses, instead of following the announced procedure of the court

---

[10] The court consolidated some of Petitioner's claims for organizational purposes.

asking the questions (doc. 1 at 5, 6). Petitioner contends allowing the prosecutor to ask the questions allowed the prosecutor to present them in the light most favorable to the State and compromised the impartiality of the jury (*id.*).

Petitioner concedes he did not raise any of these claims in state court (doc. 1 at 4, 5, 6). He explains he did not raise Grounds One and Two, because his appellate counsel failed to raise them on direct appeal (*id.* at 4). He explains he did not raise Ground Three or Ground Six, due to "[n]ew information provided by law clerks concerning improper procedure/structural error" (*id.* at 5, 6), thus arguing he was not aware of the legal basis for the claims prior to filing his federal petition.

Respondent contends none of these claims were exhausted, because Petitioner failed to argue them on direct appeal (doc. 18 at 21, 22, 23). Respondent further argues Petitioner cannot now return to state court to litigate the claims; therefore, they are procedurally barred from federal review (*id.*). Respondent additionally argues none of the claims are cognizable in federal habeas, because they present purely state law issues (*id.*).

In Florida, certain claims are barred from being raised outside a direct appeal, and trial court error with respect to evidentiary rulings, jury instructions, and permitting jurors to question witnesses are among those claims. *See* Lambrix v. State, 559 So. 2d 1137, 1138 (Fla. 1990) (per curiam) (stating that a claim of error "based on information which was contained in the original record of the case . . . must be raised on direct appeal."); *see also, e.g.*, Manuel v. State, 16 So. 3d 833 (Fla. 1st DCA 2005) (reviewing, on direct appeal, claim of trial court error with respect to admission of hearsay statement); Lopez v. State, 888 So. 2d 693 (Fla. 1st DCA 2004) (same); Calabrese v. State, 886 So. 2d 396 (Fla. 1st DCA 2004) (reviewing, on direct appeal, claim of trial court error with respect to jury instructions); Jones v. State, 886 So. 2d 257 (Fla. 1st DCA) (same); Patterson v. State, 725 So. 2d 386 (Fla. 1st DCA 1998) (reviewing, on direct appeal, claim of trial court error regarding permitting jurors to ask questions of witnesses); Tanner v. State, 724 So. 2d 156 (Fla. 1st DCA 1998) (same). Because such claims should be raised on direct appeal, a defendant is foreclosed from presenting them in a Rule 3.850 motion. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); Baker v. State, 878 So. 2d 1236, 1242 (Fla. 2004).

In the instant case, Petitioner did not raise his claims of trial court error asserted in Grounds One, Two, Three, and Six, on direct appeal (*see* Ex. F). Further, "it is apparent that the Florida courts would now refuse to hear th[e] claim[s]. . . ." Smith v. Sec'y Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)). Therefore, the claims are procedurally defaulted.

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. Petitioner has not established cause for his default. He appears to allege ineffective assistance of appellate counsel as cause for the procedural default of Grounds One and Two (*see* doc. 1 at 4). Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis default, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003). Here, Petitioner did not present a claim of ineffective assistance of appellate counsel to the First DCA, and the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired. Therefore, any such claim could not serve as cause for the procedural default of his claims. Furthermore, as to Grounds Three and Six, Petitioner's lack of awareness of the legal basis for his claims fails to establish cause for a procedural default where, as here, he was represented by counsel on direct appeal, and the factual and legal bases for a challenge under state law were plainly available at the time he filed his direct appeal. Therefore, Petitioner failed to show he is entitled to review through the "cause and prejudice" portal. Moreover, Petitioner has not shown he is entitled to review of his claims through the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, Grounds One, Two, Three, and Six are procedurally barred from federal review.

B.    Ground Four: "Court erred in denying appellant's motions for acquittal because state evidence was legally insufficient to convict."

Case No.: 4:10cv383/RH/EMT

Petitioner contends the State failed to rebut his reasonable hypothesis of innocence, namely, that his striking one deputy with his car and nearly striking another deputy was an accident (doc. 1 at 5). He states he raised this claim on direct appeal (*id.*).

Respondent contends Petitioner failed to fairly present his claim in state court; therefore, it is procedurally barred (doc. 18 at 25–26). Respondent contends notwithstanding the failure to exhaust, the claim is without merit (*id.* at 26–27).

The state court record demonstrates that in Petitioner's brief on direct appeal of his conviction, he argued that the trial court erred by denying his motion for judgment of acquittal ("JOA") because the State's evidence was legally insufficient (Ex. F). He specifically argued that the State failed to prove he intended to strike or assault any law enforcement officer with his car, which was an essential element of the attempted murder and assault offenses charged in Counts I and II (*id.* at 18–20). He also argued that the State relied on circumstantial evidence to prove his intent as to those two Counts; however, the State failed to rebut his reasonable hypothesis of innocence that the incident was an accident (*id.* at 20–21). Therefore, the trial court erred in denying his motion for JOA (*id.*).

Petitioner framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no specific reference to the United States Constitution or federal law, and he cited no federal cases. He argued Florida law only. Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim. Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the denial of the motion for JOA was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted. *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689 (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for JOA because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard

identical to federal standard); <u>Cook v. McNeil</u>, 266 F. App'x 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see* <u>Mulinix v. Sec'y for Dep't of Corr.</u>, 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[11]

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law. *See* <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *see also* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal).

Petitioner has not alleged cause for his default; nor has he alleged he is entitled to review of his claim through the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, Ground Four is procedurally defaulted, and the court will not consider it on the merits.

C.    <u>Ground Five: "Ground Five:  Ineffective assistance of counsel for direct appeal by plain error."</u>

Petitioner claims that his appellate counsel on direct appeal failed to "raise any objection by defense in direct appeal motion thereby saving those issues for post-conviction rule 3.850 motion" (doc. 1 at 6). He appears to argue that appellate counsel was ineffective for failing to preserve issues for review in a postconviction proceeding. Petitioner also faults appellate counsel for failing to file

---

[11] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

Case No.:  4:10cv383/RH/EMT

a reply brief (*id.*).  Petitioner concedes he did not raise this claim in state court (*id.*).  He explains he did not do so, due to "[n]ew information provided by law clerks concerning plain error" (*id.*).

Respondent contends Petitioner failed to exhaust this claim, because he did not present it to the state courts (doc. 18 at 27).  Further, Petitioner cannot now return to state court to raise the issue, because the limitation period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired (*id.*).  Respondent additionally contends, notwithstanding the failure to exhaust, the claim is without merit, because there is no requirement of appellate counsel to preserve issues for postconviction review under Rule 3.850 (*id.*).

The state court record demonstrates Petitioner did not present a claim of ineffective assistance of appellate counsel to the state courts.  Further, any attempt to now do so would be futile, because the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired.  Moreover, Petitioner has not demonstrated he is entitled to federal review of this claim through the "cause and prejudice" or "fundamental miscarriage of justice" portal.  Therefore, the court will not review the merits of Ground Five.

D. <u>Ground Seven:  "Ineffective assistance of counsel for failing to object to improper introduction of argument and evidence for counts 4 and 5."</u>

Petitioner contends defense counsel was ineffective for failing to object when it became clear that the State's witnesses would not be available at the beginning of trial, as evidenced by the prosecutor's comment during opening statements, ". . . it's looking increasingly unlikely that either of [the victims of the battery counts] are going to testify, so you may well not get to consider those two charges" (doc. 1 at 7, 13).  He contends he raised this claim in his Rule 3.850 motion (*id.* at 7).

Respondent asserts that to the extent this is the same issue raised in Ground Five of Petitioner's Rule 3.850 motion, it may have been exhausted (doc. 18 at 27–28).  Respondent contends the state court's adjudication of this claim on the merits was not contrary to or an unreasonable application of any Supreme Court precedent (*id.* at 28–34).

 1. Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's

deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693).

However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal. *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

In Ground Five of Petitioner's third amended Rule 3.850 motion, he argued that defense counsel was ineffective for failing to object to the improper introduction of argument and evidence regarding the battery counts (Counts IV and V), on the ground that it was clear from the beginning of trial that the alleged victims of the batteries, Ms. Smith and Ms. Hess, would not be available to testify as to those charges (Ex. I at 86–87). In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u>

standard as the applicable legal standard (Ex. J at 224–25). The court adjudicated the claim as follows:

>     The defendant was charged in a five count information with attempted first degree murder on a law enforcement officer (life felony), aggravated assault on a law enforcement officer (second degree felony), leaving the scene of a crash involving personal injury (third degree felony), and two misdemeanor batteries. The two misdemeanor batteries allegedly occurred about 8:30 p.m. on August 9, 2002 (Trial Record p. 56). Law enforcement investigated the complaints related to those batteries and obtained sworn statements from the victims at or near a residence located at 2931 Joyce Drive (Trial Record p. 54). As part of that original investigation, law enforcement attempted to find the defendant, however he had fled and law enforcement was unable to find him (Trial Record p. 54). At approximately 11:30 p.m. on August 9, 2002, Leon County Sheriff's Office received a follow-up call that the defendant had returned to 2931 Joyce Drive. Deputies Hibbert and Wright picked up one [of] the battery victims, Amber Hess, and traveled a short distance to 2931 Joyce Drive. They were there for several minutes when the defendant drove his vehicle striking Deputy Hibbert and almost striking Deputy Wright resulting in the three felony charges.
>
> . . . .
>
>     In the one remaining claim, claim five, defendant asserts that he received ineffective assistance of counsel because trial counsel failed to object to the introduction of evidence and argument related to counts four and five, the two misdemeanor batteries. Defendant alleges that counsel should have moved to sever counts four and five after the assistant state attorney stated in his opening statement that he was not sure whether the victims of the misdemeanor batteries would testify. In support of this claim, defendant cites Crossley v. State, 596 So. 2d 447, 450 (Fla. 1992), which held a severance should have been granted where evidence of one crime charged could be used to "bolster" proof of another crime. In Crossley, an armed robbery and armed kidnapping charge with one victim were tried with an unrelated armed robbery charge. Although close in time and location, the Florida Supreme count [sic] found the two episodes were entirely independent of one another. Id. at 450. The Court opined that courts must be careful in determining whether there is a "meaningful relationship between the charges of two separate crimes" before permitting them to be tried together. Id.
>
>     First, the Court will consider the issue of whether counsel's performance was so deficient that it fell below an objective standard of reasonableness. At trial, the defendant was represented by Owen Chin, who has practiced criminal defense for 27 years in both Miami and Tallahassee (Oct. 31, 2008, p. 25). He has tried hundreds of cases, a number of which were tried against the assistant state attorney in the instant case, Neil Wade (Oct. 31, 2008, p. 25). At the 3.850 hearing October 31, 2008, Mr. Chin testified he gave 110% effort in this case (Oct. 31, 2008, p. 29).

Regarding the state's ability to prove counts four and five, Mr. Chin testified there was some doubt whether the state would be able to procure the attendance of the victims in those counts (Caroline Smith and Amber Hess). However, he believed if Mr. Wade thought he "did not have them, he would have nol prossed" those counts (Oct. 31, 2008, p. 13, 17). Additionally, Mr. Chin consistently objected to hearsay statements made to others by these witnesses regarding the alleged batteries and any conclusion about whether the batteries charged in counts four and five actually occurred (Trial Record, p. 51–52, 55, 90, 133, 170, 186).

Although <u>Crossley</u> is relevant when considering a motion to sever, the strength or weakness of the state's case is not a legal basis for a severance. Therefore, contrary to defendant's assertion that the Judge would have granted a motion to sever after opening statements, there was no legal basis to do so.

Moreover, counts four and five were inextricably intertwined with the other three counts. The existence of the complaints which led law enforcement to stop the defendant was both relevant and necessary to the presentation of the case. Requiring both attorneys to begin their inquiries just prior to the attempted murder and aggravated assault, as the defendant now suggests, would not have been fair to the state nor the defendant. The defense in this case was that the defendant was upset about problems he was having with his girlfriend that day, Caroline Smith, one of the battery victims (Trial Record, p. 316). He testified he became very intoxicated throughout the afternoon and evening and therefore could not form the premeditated design required to prove first degree attempted murder and aggravated assault (Trial Record, p. 46–49, 316–321, 324, 330–332, 396–397). Further, the defense argued defendant's intent was to avoid arrest for "something he didn't do" referring to the batteries, not to commit an attempted murder or aggravated assault (Trial Record, p. 48–51, 327–331, 397–399). Counsel is not ineffective for choosing a defense strategy that the defendant wants. <u>Pooler v. State</u>, 980 So. 2d 460 (Fla. 2008).

The defense presented required discussion of the facts which led up to counts one, two and three. Intent was a major issue in the case and this required testimony of why the police were present at the location of the crimes alleged in counts one, two and three. There is a strong presumption counsel is not ineffective and the defendant carries the burden to overcome the presumption that decisions were made as part of a sound trial strategy. <u>Barnhill v. State</u>, 971 So. 2d 106, 110 (Fla. 2007). Mr. Chin's decision to focus on intent was a sound trial strategy, given the evidence presented. Therefore, the Court finds that counsel's representation did not fall below an objective standard of reasonableness.

Next, the Court will consider whether there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. The battery victims did not testify at trial and the defendant testified the

batteries never occurred. Additionally, pursuant to Mr. Chin's objections, the court prohibited hearsay testimony related to the batteries. Other testimony in the case included multiple eyewitnesses to counts one, two and three, some law enforcement and some lay witnesses, several of whom were friends of the defendant. All of these witnesses testified to the crash and some law enforcement and lay witnesses testified the defendant did in fact speed up before striking the officer with his vehicle. An accident reconstructionist testified the defendant was traveling at least 27 miles per hour at the time of impact. Finally, the defendant confessed completely to count three (Trial Record, p. 274–275, 293–295, 328–330, 397, 404–405). Again this made intent a central part of the defense in this case.

When considering defendant's argument related to <u>Crossley</u>, it is also important to keep in mind the charges in <u>Crossley</u>. In <u>Crossley</u>, there was an armed robbery and armed kidnapping charge with one victim and a second insufficiently related armed robbery charge. Those charges are of about equal severity. Conversely, in the instant case counts one, two and three were much more serious than counts four and five. Therefore, it is unlikely that counts one, two and three were somehow "bolstered" by counts four and five. Additionally, there was clearly a "meaningful relationship" between these five charges as the officers were present when counts one, two and three occurred because they were investigating counts four and five. Therefore, the instant case is unlike <u>Crossley</u> or <u>McNabb v. State</u>, 967 So. 2d 1086 (Fla. 1st DCA 2007).

Therefore, the Court finds that defendant has failed to show there is a reasonable probability that if the state had been required to proceed only on counts one, two and three, the result of the proceeding would have been different.

(Ex. J at 223–27). Petitioner appealed the decision to the First DCA (Ex. 11–25). The appellate court affirmed the lower court's decision without written opinion (Ex. O).

The state circuit court determined that under Florida law, there was no basis to sever the misdemeanor battery counts after opening statements. That decision was affirmed by the appellate court. While the affirmance was a per curiam opinion without reasoning, the federal habeas court presumes that the state court of appeal's decision affirms the reasoning, as well as the judgment of the circuit court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" <u>Sweet v. Sec'y Dep't of Corr.</u>, 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991)); *see also* <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from

a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court."). This court must abide by the state court's interpretation of state law. *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

 Given the state court's determination that there was no basis to sever the battery counts, Petitioner cannot make the showings required under federal law to demonstrate ineffective assistance with regard to counsel's failure to move for severance. As previously discussed, under Strickland, a habeas petitioner claiming ineffective assistance of counsel must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. 466 U.S. at 687. If the battery counts were not properly severable under Florida law, as the Florida court determined, defense counsel's performance in failing to move for severance cannot be considered deficient. *See* Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) (holding where "claims were meritless, it was clearly not ineffective for counsel not to pursue them."). This determination also means Petitioner cannot show that he suffered prejudice resulting from counsel's failure to move for severance. *See* Lockhart v. Fretwell, 506 U.S. 364, 374, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) ("the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law. . . .") (O'Connor, J. concurring).

 Petitioner also failed to establish the state court unreasonably denied his claim that counsel was ineffective for failing to object to, or make a motion in limine to preclude, evidence and argument regarding the batteries upon the prosecutor's commenting during opening statements that it was unlikely the victims would appear. Mr. Chin testified at the postconviction evidentiary hearing that until the State rested its case, he did not believe it was a foregone conclusion that the victims would not appear. He testified:

> . . . I had discussed the case with Mr. Wade [the prosecutor]. I know he was trying to exert all best efforts to locate these witnesses. I did not know for a fact that they weren't going to be called. I know that the long arm of the law, in terms of ferreting out witnesses in this county, is pretty good. I based that on the fact that he had represented they were looking for [them]. There may be a likelihood that they wouldn't show up, but I couldn't foreclose it. And I felt at that time that if he didn't have them he would have nolle prossed it, prior to going to trial.

(Ex. K at 13–14). Indeed, it is evident from the record that even the prosecutor held out hope that at least one of the battery victims would appear prior to the close of the State's case. When the State rested its case, and Mr. Chin made a motion for judgment of acquittal, the prosecutor stated:

> MR. WADE: Just for the record so the record is clear, I had held out a faint hope that we would have [Ms.] Hess here at some point today. We got a call this morning from one of her relatives, I believe, it was one of her relatives, that indicated they were going to try to locate her and get her here. But obviously, that's turned out to be a forlorn hope.

(Ex. D at 312–13). Thus, although the prosecutor stated in his opening statement that it appeared "unlikely" that Ms. Smith and Ms. Hess would testify, the fact that a relative was attempting to locate Ms. Hess provided a good faith basis for the belief that at least one of the battery victims may have eventually appeared at trial. Petitioner failed to demonstrate a reasonable probability that if Mr. Chin had moved, at the beginning of trial, to preclude all argument and evidence regarding the batteries, on the ground that the State did not intend to present testimony from either victim, the trial court would have granted the motion. Therefore, Petitioner failed to show he was prejudiced by Mr. Chin's alleged error.

Petitioner also failed to show ineffective assistance with regard to Mr. Chin's failure to limit evidence regarding the details of the batteries. As the state court found, Mr. Chin made efforts to limit evidence of those details. Before Deputy Wiley Meggs testified, Mr. Chin stated his objection to the introduction of hearsay statements of the battery victims through the testimony of other witnesses (Ex. C at 51). The prosecutor responded that he intended to introduce evidence of the reason the officers responded to a call from one of the victims, but "I am not going to get into all of the facts of the . . . complaints" (*id.* at 52). The prosecutor stated he did not intend to introduce hearsay statements of the victims of the batteries (*id.*). During trial, Mr. Chin objected when trial witnesses attempted to testify regarding information they received from the battery victims (*id.* at 55, 90, 133, 170, 186). Further, when Deputy Wright testified that, "There was apparently an earlier battery that had occurred," Mr. Chin objected to the conclusion that a battery had occurred and moved to strike the testimony (*id.* at 90). The trial court granted the motion to strike (*id.*). Mr. Chin did <u>not</u> object when Deputy Meggs testified that his involvement in the case started when he responded to a call regarding domestic and physical violence allegations involving Petitioner, or

when Deputy Hibbert and Deputy Wright testified they were at the scene (where the attempted murder and aggravated assault of him and Deputy Wright, respectively, eventually occurred) in furtherance of their investigation of a complaint of domestic violence and an alleged battery involving Petitioner (Ex. C at 53–54, 90, 132). However, evidence that the deputies were investigating a crime involving Petitioner was probative of an essential element of Count II, that is, the victim/officer was engaged in the lawful performance of his duties as a law enforcement officer at the time of the assault. *See* Fla. Stat. § 784.07(2)(c). Therefore, evidence of the criminal investigation involving Petitioner was admissible. *See* <u>Tillman v. State</u>, 964 So. 2d 785, 788–89 (Fla. 4th DCA 2007) (evidence that officer was investigating a BOLO report was admissible where elements of offense was that officer was engaged in the lawful execution of a legal duty). Although evidence of the <u>nature</u> of the crimes being investigated was not relevant to the "lawful performance of his duties" element, at the time the officers testified (indeed, throughout the entire presentation of the State's case), Mr. Chin reasonably believed the State may locate and secure the attendance of at least one of the battery victims (*see* Ex. K at 18). Therefore, Petitioner failed to show ineffective assistance with respect to Mr. Chin's failure to object to testimony regarding the nature of the charges the officers were investigating when one of them was struck, and the other nearly struck, by Petitioner's car.

Finally, Petitioner failed to show that Mr. Chin performed ineffectively by presenting testimony from Petitioner regarding the alleged batteries. As the state court found, Petitioner's intent was the principal issue at trial. To prove attempted first degree murder (as charged in Count I), the State was required to prove that Petitioner acted with a premeditated design to kill Deputy Hibbert; and to prove aggravated assault on a law enforcement officer (as charged in Count II), the State was required to prove Petitioner intentionally threatened to do violence to Deputy Wright. During the State's case, Deputy Wright testified he and Deputy Hibbert went to 2931 Joyce Drive to further investigate an alleged battery that had been reported earlier that evening at another location (Ex. C at 90–91). He testified they were looking for Petitioner, and while they were in the house on Joyce Drive, one of the occupants pointed outside and said, "[t]here he goes" (*id.* at 95). Deputy Wright testified he saw a vehicle in the cul-de-sac, and as it turned around, he and Deputy Hibbert ran down the driveway flashing their flashlights and yelling stop in an attempt to stop the

vehicle (*id*.).  He testified he and Deputy Hibbert were in the road, and the driver of the vehicle turned out of the cul-de-sac and then revved the engine and accelerated, and the headlights turned toward them (*id.* at 98–99).  He testified he stepped out of the way just before the car passed, and when he (Wright) turned toward Deputy Hibbert, the car had hit Hibbert (*id.* at 100–01).  Deputy McClure testified Petitioner told him he saw two men waving flashlights on the road in front of the house on Joyce Drive (Ex. D at 294–95).  McClure testified Petitioner also told him he could not believe he was charged with attempted murder because he was only going 15 miles per hour when he hit one of the men (*id.*).

Petitioner testified that during the alleged domestic violence incident involving Ms. Smith, Petitioner's girlfriend (Ms. Smith) pushed him and began swinging at him, and he defended himself by grabbing her hair and pulling her head down so she would hit his legs instead of his face (Ex. D at 322–23).  Petitioner testified that the other alleged victim, Ms. Hess, took his car keys and "got all up in my face," so he "pushed her out of my face" (*id.* at 323).  Petitioner testified he left the house where these events occurred and went to a friend's house, and  ten to fifteen minutes later, Ms. Smith and some mutual friends came over and asked him to return to the other house with them (*id.* at 324–25).  Petitioner testified he returned only briefly, and then he went to his friend Nick's house (*id.* at 325–26).  He testified that Ms. Hess's boyfriend arrived at Nick's house, and they discussed what happened (*id.* at 326–27).  Petitioner testified Ms. Hess's boyfriend told him he understood Petitioner's reaction to Hess's conduct, and that he had experienced the same type of conduct from her (*id.* at 326–27, 344).  Petitioner testified he eventually went to the house on Joyce Drive, even though he "didn't really want to have anything to do with [Ms. Hess and Ms. Smith]" (*id.* at 327, 351).  He testified he first drove around for approximately forty-five (45) minutes and then went to Joyce Drive (*id.*).  Petitioner testified that when he arrived on Joyce Drive, he missed the driveway of the house, turned around in the cul-de-sac, saw a police car, and "was just thinking about getting out of there" (*id.* at 327–28).  He testified he was driving away when he was startled by a loud scream, which caused him to jerk his head to the right, and then he hit something but had no idea it was a person, and he drove away (*id.* at 329–31).  Petitioner testified he was not mad or upset when he saw the police car, but he acknowledged he was upset earlier in the evening when he was

told that Ms. Hess had called the police (*id.* at 351). He testified he wanted to avoid police because he was intoxicated while driving (*id.* at 336–37).

At the postconviction evidentiary hearing, Mr. Chin testified he advised Petitioner to testify, because he was the only person who could explain his thinking and actions while he was in the car at Joyce Drive (Ex. K at 29–30). Mr. Chin testified that in retrospect, Petitioner could have testified effectively regarding his lack of intent without explaining his side of the story regarding his arguments with Ms. Hess and Ms. Smith, which Chin acknowledged, in retrospect, painted Petitioner in an unfavorable light with the jury (*id.* at 22, 30).

In evaluating Mr. Chin's performance, the court is mindful of the deferential lens through which the Supreme Court has stated counsel's performance must be scrutinized. As previously discussed, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers</u>, 13 F.3d at 386. Here, the jury had heard references to an investigation of alleged domestic violence involving Petitioner. With the jury having heard those references, and with Mr. Chin and Petitioner having decided that Petitioner's testimony regarding his thinking and actions in the car would be helpful to eliminate the suggestion he intended to threaten violence to and strike the deputies (*see* Ex. K at 29–30), it was not unreasonable for Mr. Chin to elicit testimony from Petitioner regarding the battery allegations, to suggest to the jury that the allegations were unfounded.

Upon consideration of this record, the state court's denial of Petitioner's ineffective assistance of counsel claim could have been supported by the theory that Petitioner failed to establish that no reasonable lawyer, in the circumstances, would have (1) failed to make a motion for severance, (2) failed to object or make a motion to preclude <u>all</u> argument and evidence regarding the batteries, or (3) elicited testimony from Petitioner regarding the batteries. The state court's decision also could have been supported by the theory that there is no reasonable probability the result of Petitioner's trial would have been different but for these alleged errors. While it is possible

that fairminded jurists could disagree that one or both of these theories are inconsistent with <u>Strickland</u>, the existence of this potential for disagreement precludes this court from granting habeas relief on this claim. *See* <u>Harrington</u>, 131 S. Ct. at 786; <u>Johnson v. Sec'y, Dep't of Corr.</u>, 643 F.3d 907, 910 (11th Cir. 2011) (". . . only 'if there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents' may relief be granted.") (quoting <u>Harrington</u>, 131 S. Ct. at 786). Therefore, Petitioner is not entitled to relief on Ground Seven.

     E.    <u>Ground Eight: "Ineffective assistance of counsel for failing to object to prosecutor's improper closing argument."</u>

Petitioner alleges that during closing argument, the prosecutor stated, "I ask you to render a verdict that finds him guilty as charged . . . . Render a verdict that speaks the truth." (doc. 1 at 7). Petitioner contends defense counsel was ineffective for failing to object to these comments (*id.*). He states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent contends to the extent Petitioner argues the same ground as he did in his Rule 3.850 motion, he failed to demonstrate the state court's adjudication was unreasonable under <u>Strickland</u> (doc. 18 at 34–37).

     1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

     2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 4 in his third amended Rule 3.850 motion (Ex. I at 85–86). He argued the prosecutor's comments were improper, because they stated that the only facts which reflected the truth were those indicating Petitioner's guilt (*id.* at 86). The state circuit court adjudicated the claim as follows:

> In Ground 4 of his motion, Defendant argues his counsel was ineffective for failing to object to the prosecutor's improper closing argument. Specifically, Defendant alleges the prosecutor stated to the jury, "I ask you to render a verdict that finds him guilty as charged . . . . Render a verdict that speaks the truth," in violation of <u>Northard v. State</u>, 675 So. 2d 652 (Fla. 4th DCA 1996).

Notwithstanding the dubious assertion that this comment, standing alone, led to Defendant's conviction, counsel was not deficient for failing to object because the comments were not improper. A reading of the trial transcript evidences that some 15 lines of argument separate two independent statements, which Defendant has threaded together with an ellipse (<u>See</u> Attachment A; Defendant's Third Amended Motion at 13). Read properly in the context of closing argument and as separate statements, there is nothing objectionable about either of the prosecutor's requests. A prosecutor is permitted to ask the jury to return a guilty verdict, and either side is permitted to request that the jury return a truthful verdict. Indeed, the jurors' oath requires them to do so. Furthermore, <u>Northard</u> relates to improper argument as to the verdict during opening statements, and the opinion evidences a concern that a jury would convict based on a defendant's lack of truthfulness instead of analyzing whether the State met its burden of proof. <u>See</u> <u>Northard</u>, 675 So. 2d at 653. Neither circumstance is present here. The comments were made during closing argument and did not attempt to shift or minimize the State's burden of proof. Ground 4 is denied.

(Ex. I at 154). Petitioner appealed the decision to the First DCA (Ex. L at 38–39), and the appellate court affirmed the lower court's decision without written opinion (Ex. O).

The trial record shows that the comments identified by Petitioner were made by the prosecutor in the following context:

This defendant did what he's charged with doing and I ask you to render a verdict that finds him guilty as charged. Not because it's pleasant or because you like doing it, but because the evidence and the law and your common sense require it.

Mr. Steurer's efforts to excuse what he did are contradicted by the testimony of his friends, contradicted by the testimony of the officers, contradicted by the physical facts, and contradicted by your own common sense.

His—look at one little point. Here he is in the cul-de-sac turning around and he sees the police car and says, uh-oh, I've got to get out of here. And he suddenly is supposed to be fumbling around with something somewhere else and hears somebody screaming at the window when there's nobody there. And that's the explanation. I was gone. It's not my fault. I didn't know what I did.

Render a verdict that speaks the truth.

(Ex. D at 413).

The state circuit court rejected Petitioner's argument that the comments were improper under <u>Northard</u>. After the circuit court's decision, and prior to Petitioner's filing his postconviction initial

brief on appeal, the Fourth District Court of Appeal issued <u>Dunlap v. State</u>, 21 So. 3d 873 (Fla. 4th DCA 2009), which clarified that the problem in <u>Northard</u> was that the combination of the prosecutor's comments in his opening statement and closing argument improperly stated the legal burden of proof and suggested that the jury should reach its verdict based solely on a determination of who was lying and who was telling the truth.  <u>Dunlap</u>, 21 So. 3d at 876.  The <u>Dunlap</u> court distinguished its facts from <u>Northard</u> and determined that the prosecutor's single reference to "the truth" neither insinuated that Dunlap needed to prove anything, nor invited the jury to convict him for a reason other that the State proving his guilt by evidence beyond a reasonable doubt; therefore, the comment was not improper.  *Id.* at 876–77.  The First DCA had the benefit of <u>Dunlap</u> when it affirmed the lower court's denial of Petitioner's ineffective assistance of counsel claim.  Like <u>Dunlap</u>, the prosecutor's comments in the instant case properly commented on the jury's obligation to determine the credibility of the witnesses' testimony and did not suggest any improper basis for reaching a verdict.  There was no suggestion that the jurors' determination of who was telling the truth should be the sole basis for the jury's verdict; instead, the prosecutor asked the jury to find Petitioner guilty "because the evidence and the law and your common sense require it."

Petitioner failed to show that Mr. Chin had a meritorious basis for objecting to the comments. He also failed to show he suffered prejudice resulting from Mr. Chin's failure to object.  Therefore, the state court's adjudication of this claim was reasonable under <u>Strickland</u>.

F.     <u>Ground Nine:  "Ineffective assistance of counsel for failing to object to an illegal sentence."</u>

Petitioner asserts he was convicted of attempted second degree murder, which is a second degree felony (doc. 1 at 8).  He states the State sought to enhance the sentence because of the use of a weapon, an automobile (*id.*).  He appears to claim counsel was ineffective for failing to object to the enhancement (*id.*).  He states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent contends to the extent Petitioner raises the same claim he raised in his Rule 3.850 motion, the state court reasonably applied <u>Strickland</u> in rejecting it, because the sentencing court followed the proper procedure for applying the enhancement under state law, that is, starting with attempted second degree murder, the second degree felony of which Petitioner was convicted, and enhancing it, because of the use of a weapon, to a first degree felony (doc. 18 at 37).

        1.       Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

        2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground 2 in his third amended Rule 3.850 motion (Ex. I at 79–82). He claimed that defense counsel should have argued that the sentencing court should have first applied the "use of a weapon" enhancement to second degree murder (a first degree felony), which would have elevated the crime to a life felony, and then applied the "attempt" reduction, which would have reduced it to a second degree felony, pursuant to Florida Statutes §§ 782.04(2), 775.087, and 777.04(4)(c) (*id.*). He argued doing so would have resulted in an offense classification of a second degree felony, instead of a first degree felony (*id.*). The state circuit court adjudicated the claim as follows:

> In **Ground 2**, the Defendant claims that his sentence was illegal and that counsel was ineffective for failing to object to it. The State sought to enhance the sentence for his conviction for attempted second-degree murder (a second-degree felony), based on the weapon enhancement statute, to a first-degree felony. The Defendant raises this claim under Rule 3.800(a) in the alternative. Specifically, he claims that the weapon enhancement should be applied before the attempt reduction provision in Fla. Stat. 777.04(4), so that for scoresheet purposes, the offense of *completed* second-degree murder (a first-degree felony) gets enhanced to a life felony, and then reduced to a second-degree felony by the attempt statute. Based on this legally unsupported logic, the Defendant seeks to be resentenced to a 15 year term.

> The trial court's procedure was correctly applied. Several District Courts of Appeal have previously addressed similar or identical claims and have held that the attempt statute applies *before* the weapon enhancement statute. *See* Goutier v. State, 692 So. 2d 978 (Fla. 2d DCA 1997); Baque v. State, 653 So. 2d 1105 (Fla. 3d DCA 1995); Zeigler v. State, 653 So. 2d 272 (Fla. 4th DCA 1994). Counsel cannot be found ineffective for failing to raise a non-meritorious objection. Because the Defendant fails to demonstrate that counsel's performance was deficient, Ground Two is denied.

(Ex. I at 101–02). Petitioner appealed the decision to the First DCA (Ex. L at 33–36), and the appellate court affirmed the lower court's decision without written opinion (Ex. O).

Abiding by the state court's interpretation of state sentencing law, as this court must, *see* Bradshaw, 546 U.S. at 76 and Mullaney, 421 U.S. at 691, Petitioner cannot satisfy the Strickland

standard.  If the court's sentencing procedure was proper under Florida law, as the Florida courts have determined, defense counsel's performance in failing to object to it cannot be considered deficient.  The state court's determination also means Petitioner cannot show that he suffered prejudice resulting from counsel's failure to object.  Therefore, Petitioner failed to demonstrate he is entitled to relief on Ground Nine.

G.      Ground Ten:  "Ineffective assistance of counsel for failing to object to State's introduction of evidence concerning the reading of Miranda rights to defendant."

Petitioner contends defense counsel was ineffective for failing to object to Deputy Gore's testimony that after he read Petitioner his Miranda[12] rights, he did not question Petitioner regarding the events of the case (doc. 1 at 8).  Petitioner asserts defense counsel should have objected on the ground that the testimony was an improper comment on Petitioner's invocation of his right to remain silent (*id.*).  He states he raised this claim in his Rule 3.850 motion (*id.* at 8–9).

Respondent contends to the extent Petitioner raises the same claim he raised in his Rule 3.850 motion, the state court reasonably applied Strickland in rejecting it, because during a sidebar conference, defense counsel raised concerns about Deputy Gore's potentially commenting on Petitioner's invocation of his right to remain silent, but counsel did not object to Gore's testimony during trial, because there was no basis to do so (doc. 18 at 37–41).

1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 6 in his third amended Rule 3.850 motion (Ex. I at 87–89).  He acknowledged that defense counsel voiced his concern during the sidebar conference, but claimed that counsel should have formally objected during the sidebar or when Deputy Gore resumed his testimony (*id.*).  The state circuit court adjudicated the claim as follows, in relevant part:

In **Ground Six**, the Defendant claims that counsel was ineffective for failing to object to the State's introduction of evidence concerning the reading of *Miranda* rights to the Defendant, thus making an implicit comment on his right to remain silent.

---

[12] Miranda v. Arizona, 384 U.S. 436 (1966).

Case No.:  4:10cv383/RH/EMT

The record indicates that counsel did object during sidebar (*T. 260–261*), and the Court overruled it because the witness, Deputy Gore, misunderstood the State's question (*T. 262*).

(Ex. I at 104). Petitioner appealed the decision to the First DCA (Ex. L at 27–32), and the appellate court affirmed the lower court's decision without written opinion (Ex. O).

The trial record shows that the following occurred during Deputy Gore's testimony:

Q [by the prosecutor]. And subsequent to Mr. Steurer being taken into custody by Gadsden county officers and some of your deputies, did you have occasion to advise him of his rights pursuant to the <u>Miranda</u> decision?

A. Yes, sir, I did. I responded to where he was being detained inside the back of a patrol vehicle and I read him <u>Miranda</u> rights off of a card.

Q. Do you have that card with you?

A. Yes, sir, I do.

Q. Could you pull it out for us?

A. Yes, sir.

Q. Could you read to us what you read to Mr. Steurer?

A. Yes, sir.

You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statement.

Q. Did you ask him any questions at that point in time?

A. Yes, sir, I did.

MR. WADE: May we approach, Judge?

THE COURT: Let's go sidebar, please.

(whereupon, a sidebar conference was heard as follows:)

MR. WADE:  We're going to proffer this, that's not the response I expected. It was my understanding that he did not ask him any questions.  Apparently I have erred, or I didn't ask the question appropriately.  My understanding is that he didn't question him at that point in time.  But we're going to need to clarify that before we step off into deep water.

THE COURT:  Why don't we bring the deputy over here and see if we can clarify what the situation is.

(The following was in open court:)

THE COURT:  Deputy Gore, would you step around over here please, sir.

(Sidebar conference continues as follows:)

MR. WADE:  Deputy Gore, your response surprised me a little bit only because I understood that you had not asked him any questions.

THE WITNESS:  The only questions I asked are the ones that are on the back of the card.  Do you understand your rights?  Do you wish to talk to me now?

MR. WADE:  And what was his response to those questions?

THE WITNESS:  It was cursing.

MR. WADE:  That's not what I meant when I said questions.  I didn't mean to stop you, it's just that element of the rights waiver—

THE WITNESS:  Okay.  I'm sorry.

MR. WADE:  —being read, and were the rights being read. If I could rephrase the question.  Did you proceed to question him about these events?  Your answer would have been no?

THE WITNESS:  Yes, it would.

THE COURT:  Reask the question.

MR. WADE:  Okay.  That's what I intend to do.

THE COURT:  Do you have an objection to that?

MR. CHIN:  My concern is based upon the deposition I took of Detective Gore was [sic] he exercised his rights.  So, we're in treacherous water to where these questions are going.

THE COURT:  Say what?

MR. CHIN:  My understanding is Detective Gore asked if he wanted to—if he exercised his right to remain silent, we're in treacherous, treacherous waters at this juncture, Judge.  I don't know why the State called this witness, you know.  With regard to reading the rights where he invoked his rights with this officer.  The thing is, by asking these questions he creates the inference that he was Mirandized and he chose not to speak, which is a comment to that by implication.

THE COURT:  That isn't what is before the jury at this point.  It's that he was advised of his rights and he asked him questions.

MR. CHIN:  I know, Judge, but, there's implication that he was Mirandized and he didn't choose to speak, he must have waived his rights, which is directly—

THE COURT:  Well, I think what Mr. Wade is—what he's going to ask him whether he asked him anything about this case and the officer is going to say I didn't ask him anything about the case.  And somehow that's a comment on his right to remain silent?  I don't see it.

MR. CHIN:  As long as it comes out that way, Judge, but I'm just giving you my concerns.

THE COURT:  Yes.  All right.

(whereupon, the sidebar conference was concluded.  Testimony of witness continues as follows:)

Q [by the prosecutor].  Deputy, I may not have phrased that question very well.  Once you advised Mr. Steurer of his rights, did you then proceed to question him about the events of this case?

A [by Deputy Gore].  No, sir, I did not.

(Ex. D at 259–62).

The state postconviction court's factual finding that Mr. Chin objected during the sidebar conference, and the trial court overruled the objection, was not unreasonable.  During the sidebar, after the prosecutor stated he intended to ask Deputy Gore if he proceeded to question Petitioner

about the events of the evening, and Deputy Gore responded that his answer to that question would be no, the court asked Mr. Chin if he objected to that testimony (emphasis added). Mr. Chin responded he was concerned that the testimony created the inference that Petitioner was Mirandized and he chose not to speak, which was an implied comment on Petitioner's invoking his right to remain silent. The court responded it did not share Mr. Chin's view, and did not view Gore's testimony—that he did not question Petitioner after he advised him of his rights—as a comment on Petitioner's invoking his right to remain silent. Mr. Chin's having expressed his position on the record that the testimony was an implied comment on Petitioner's invoking his rights, and the court having expressed its disagreement with Mr. Chin's position on the record, it was not unreasonable for Mr. Chin to decline to renew his objection to Deputy Gore's testimony. Moreover, Petitioner failed to show that if Mr. Chin renewed his objection, there is a reasonable probability the trial court would have sustained the objection. Therefore, the state court's adjudication of this claim was not unreasonable under Strickland.

H.    Ground Eleven: "Cummalative [sic] effect."

Petitioner contends the cumulative effect of defense counsel's numerous errors entitle him to relief (doc. 1 at 9). He states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent contends to the extent Petitioner raises the same claim he raised in his Rule 3.850 motion, the state court's adjudication of the claim was neither contrary to nor an unreasonable application of any controlling Supreme Court precedent (doc. 18 at 43).

In Ground 8 of Petitioner's third amended Rule 3.850 motion, he argued that when considering the cumulative effect of defense counsel's representation, it was clear that counsel's level of representation fell below that of reasonably competent counsel (Ex. I at 96). He argued further that there was a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different, even if the outcome would not have changed but for any one particular error (*id.*). The state circuit court adjudicated the claim as follows, in relevant part:

> In **Ground Eight**, the Defendant claims that the cumulative effect of counsel's representation prejudiced the outcome of the proceeding. However, the

Defendant provides no factual support for this broad and conclusory claim; according Ground Three [sic] is denied.

(Ex. I at 105). Petitioner appealed the decision to the First DCA (Ex. L at 39–40), and the appellate court affirmed the lower court's decision without written opinion (Ex. O).

Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[13] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of defense counsel rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254.[14] *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing

---

[13] *See* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

[14] The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565–66, 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished). However, the court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[15]

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See* United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero."); *see also* United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, *supra*; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 F. App'x 374 (6th Cir. 2007) (unpublished). Thus, Petitioner must show error with respect to at least two of his individual claims.

---

[15] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas. The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas. *See* Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims. *See* Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007). The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue. *See* Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland. *See* Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

As previously discussed, none of the alleged errors of trial counsel, considered alone, approaches the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally fair trial. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative effect" argument. *See* <u>Bronstein v. Wainwright</u>, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); <u>Ballard v. McNeil</u>, 785 F. Supp. 2d 1299, 1335–37 (N.D. Fla. 2011); *see also* <u>Rasley v. Buss</u>, No. 5:08cv368/RH/EMT, 2011 WL 2358650, at *32–32 (N.D. Fla. Apr. 11, 2011) (unpublished), *Report and Recommendation Adopted at* 2011 WL 2293383 (N.D. Fla. June 9, 2011).

## V.  CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Michael D. Crews is substituted for Kenneth Tucker as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 23<u>rd</u> day of April 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

     Objections  to  these  proposed  findings  and  recommendations  may  be  filed  within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).